**PLAINTIFF'S COMPLAINT TO THE COURT**

To the honorable judge of the Northern District Texas court, the Plaintiff files this original complaint as of Thursday April, 16, 2024 listing the cause for action and relief. This court has jurisdiction over this matter as the amount exceeds the minimum jurisdiction limits of this court. This court has jurisdiction over the federal laws violated by the Defendant. The Plaintiff was within her EEOC Right-To-Sue 90-day timeline when complaint was filed.

**FACTUAL BACKGROUND - (SUPPORTED BY DIRECT EVIDENCE AND BUT-FOR CAUSATION)**

**NATIONAL FEDERAL LAWS VIOLATED BY EMPLOYER:**

**1.) Title VII of the Civil Rights Act of 1964 - Race Discrimination & Retaliation**

**Facts & Details: (supported by direct evidence)**

Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice for an employer to discriminate against any individual based on race/protected traits". The Ninth Circuit court ruled in 2003, "Put simply, the plaintiff in any Title VII case may establish a violation through a preponderance of evidence (whether direct or circumstantial) that a protected characteristic played 'a motivating factor.'" *Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003), 299 F.3d at 853-54; also *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772-73 (2015) Title VII relaxes the but-for causation standard "to prohibit even making a protected characteristic a 'motivating factor' in an employment decision".

Justice O'Connor concluded that the burden would shift only where a disparate treatment plaintiff could show by "direct evidence that an illegitimate criterion was a substantial factor in the [employment] decision." *Price Waterhouse v. Hopkins*, 490 U. S. 228 adding that "mixed" and "single" motives are not two "fundamentally different" theories of liability. *Costa*, 299 F.3d at 857. Instead, they are merely two avenues of instruction by which the plaintiff may meet the ultimate burden of proof: "to show by a preponderance of the evidence that the challenged employment decision was 'because of' discrimination.'" *Id.*

**BUT-FOR CAUSATION**

**Discriminatory reason was "a motivating factor" in the employer's action:**

If it was not for the Plaintiff's race (as an African-American) the discrimination and discriminatory retaliation by the Defendants would not have occurred as white employees were given additional privileges, better working conditions, and allowed to enjoy the benefits of their employment.

The Plaintiff was one of three black employees (Ivana Sanders, James Brock, and Trevor Bracy) employed at FedEx Gaylord Texan between August 2021 - June 2023. Each of these black employees (all three) were repeatedly allowed by the Defendants to be subjected to severe and pervasive violence, attacks, and abuse by white employees. The Plaintiff (and the other black employees) was discriminated against and retaliated against because of her race as it was a habitual response by the Defendants to make working conditions harder, harsher, and hostile for

black employees who complained about how they were being persistently, violently bullied and tormented by white employees (Kecia) Barnhill and (Matthew) Westbrook.

*James Brock and Trevor Bracy*

The Plaintiff and two (2) other black employees at FedEx Gaylord (Trevor Bracy and James Brock) suffered adverse employment decisions that we were subjected to by FedEx. Were ALL allowed to be continuously tormented viciously and violently by white harassers in their workplace.

**The torment lasted for over a year for the Plaintiff case until she began experiencing severe anxiety attacks one which left her in need of emergency EMT assistance.**

**<u>Trevor Bracy</u> was violently physically attacked with objects thrown at him.**

**<u>James Brock</u> suffered being targeted with multiple racially inflammatory rants.**

The white harassers were repeatedly given a pass by HR and management, had excuses made for them by HR and management, and did not face any of the necessary repercussions by HR and management while the black employees were forced and required to endure abuse from them as a condition of their employment.

The other harassing white employee, Matthew Westbrook, was allowed to harass Trevor and James:

**First (1st) black employee**…(**<u>James Brock)</u>** was harassed to the point that James Brock could not take it anymore and before he abruptly RESIGNED. James Brock said to multiple people that, “Even with witnesses, apparently at FedEx you can attack people with racial epithets

(white employee Matthew viciously calling black employee James "BOY" and screaming at James that he "WASN'T WORTH SHIT") and get away with it and that apparently you can continue to harass somebody and not face any consequences or repercussions."

James reiterated after he felt he had no other choice but to resign for his safety and mental health partly due to his white harasser [Westbrook] not facing any repercussions from HR or management after months of harassing black employees.

**Second (2nd) black employee**…(**Trevor Bracy)** who complained to FedEx management and HR about the harassment and racially volatile comments being made by Matthew Westbrook and the harassment was still allowed to violently escalate, to the point that Matthew Westbrook went into a rage, threatened to physically attack Trevor, and began throwing items at Trevor - breaking the items.

The Plaintiff was given direction by her Store Manager Hersma (Defendant) to "get distance" from Harasser - Barnhill by working in the FedEx Gaylord shipping dock and making extra packages deliveries throughout the Gaylord Texan Resort and Convention Center.

Under this direction, the Plaintiff was given harsher, less desirable, more strenuous, physically exerting, physically exhaustive tasks in an environment that was insect riddled, dust covered, and was not climate controlled (often either very hot or very cold) in the shipping dock loading and unloading 18-wheeler trucks, processing packages that were often more than 100 pounds, and using heavy machinery while white Harasser - Barnhill was allowed to maintain space in the much more pleasant, relaxed, climate controlled office environment of the business center.

Also, the Plaintiff was also given direction by Hersma to make more package deliveries throughout the hotel/Gaylord Texan leaving the Plaintiff having to push, load, and unload large metal carts of literally hundreds and hundreds of pounds of boxes, crates, and sometimes pallets of equipment and other shipments once again undesirable tasks white Harasser - Barnhill was given the privilege not to have to participate in.

The Plaintiff - who was more suited to work in the Business Center with her background in Graphic Design, Customer Service, outstanding rapport with the Gaylord Texan event planning managers, and history of helping to train FedEx Gaylord employees especially on the FedEx computer production design system known as the "PPA" - felt as though she was being forced to do extremely demanding "sweat work" and treated "like a mule" while her white Harasser - Barnhill was allowed to enjoy light, cool, feminine, delicate conditions. The definition of "adverse employment action" for purposes of a disparate treatment claim comes from *Chuang v. University of California Davis, Board of Trustees, 225 F.3d 1115, 1126 (9th Cir.2000)* finding that "[t]he removal of or substantial interference with work facilities important to the performance of the job constitutes a material change in the terms and conditions of a person's employment".

**Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test. This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer:**

The Plaintiff was denied a promotion that she was well equipped for, already fulfilling the tasks and responsibilities for, and was already told by her Store Manager - Hersma (Defendant) that she was "perfect for". **Immediately after** filing her first HR complaint regarding facing alarming harassment from Harasser - Barnhill (in March 2022) this promotion which she was well-equipped for and "perfect for" (to Lead Consultant from General Store Consultant) was withheld from her in a discriminatory and retaliatory adverse employment action by the Defendants for 5 months. **One of the elements that must be present in retaliation claims must be a "causal connection," which is a link between the protected conduct and the harmful action to the employee that followed.**

While her promotion was being withheld, a white coworker - who did not even work at the FedEx Gaylord anymore - Stewart Wertenberger, was placed in the role she was more than qualified instead of her by District Manager - Richardson (Defendant) there are multiple witnesses to this. On August 1, 2022, Store Manager - Hersma (Defendant) informed the Plaintiff that she would continue to be passed over for promotions until she agreed to accept enduring violent harassment as a condition of her continued employment which her white coworkers were not required to do in order to keep and maintain their employment and advance within the company.

On August 1, 2022, the Plaintiff was informed by Store Manager - Hersma (Defendant) that she was indeed being denied promotions and would continue to be denied promotions unless she relinquished her civil right to participate in protected activities.

Occurring on August 1, 2022 - Store Manager - Justyn Hersma (DEFENDANT) told THE PLAINTIFF verbatim, **"The HR stuff, that has to stop"** in order for THE PLAINTIFF to have the ability to get any promotion and pay raise at FedEx in the future. Store Manager - Justyn Hersma (DEFENDANT) told the PLAINTIFF verbatim that he knew she was a "perfect candidate for the role" and he had "no doubts about her ability to do well in the role", but that the role was a "leadership role" that required "maturity" he considered it a **"sign of maturity" if she could give him her word that she would NOT file anymore HR complaints** regarding the continuous workplace violence and workplace harassment. Store Manager - Justyn Hersma (DEFENDANT) went on to say that he NEEDED her word on that in order to approve her request for a promotion and the pay raise that came with it. **AN EVENT WHICH HERSMA - DEFENDANT ADMITTED TO ON AUDIO RECORDING/DIRECT EVIDENCE.**

Only after she gave her word to Hersma that she would comply with the unlawful conditions to maintain her employment and finally be allowed to have a promotion and pay raise was she then allowed to advance into the Lead Consultant role and only then was she allowed to have a pay raise. The very next day, Hersma informed the Plaintiff during a August 2, 2022 phone call that "he and (Richardson) decided that she (Plaintiff) had NOW earned her promotion".

The white employees were not subjected these unlawful "terms" and "conditions" of their employment, pay raises, or promotion opportunities. For example, the white employee (Stewart Wertenberger) who was originally given the Plaintiff's promotion to Lead Consultant instead of her (through May 2022 - August 2022) was invited back to the FedEx Gaylord with a promise

that his managers (Richardson and Hersma) would nurture his career goals into management positions.

**If the Defendants were not Retaliating against the Plaintiff, WHICH THEY ADMITTED TO DOING AND ALSO DID ON AUDIO RECORDING, her promotion would have never been withheld in discriminatory retaliation. The EEOC determines that *"communicating with a supervisor or manager about employment discrimination, including harassment" (Equal Employment Opportunity Commission)* is a legally protected activity and an employer retaliating against an employee for participating in legally protected activities are violating federal law. *"Other acts to oppose discrimination are protected as long as the employee was acting on a reasonable belief that something in the workplace may violate EEO laws, even if he or she did not use legal terminology to describe it." Id.***

**Supporting Events for this charge:**

- Occurring on or around April 25, 2022 - THE PLAINTIFF (who is African-American/Black) was replaced for a promotion that she was more than qualified for by a white coworker who she was equally qualified with and under nearly identical circumstances the white coworker was favored over her. This act of retaliation and discrimination was personally organized by District Manager - Chris Richardson (DEFENDANT) (who is Caucasian/White) as multiple witnesses can confirm.

- **ON AUDIO RECORDING MULTIPLE TIMES** - THE PLAINTIFF was repeatedly threatened and intimidated by her Store Manager - Justyn Hersma (DEFENDANT) (who is Caucasian/White) and District Manager - Chris Richardson (DEFENDANT) with demotion, firing, forcible transfer, withholding of promotion, and having her work hours/pay reduced for exercising her civil right to participate in protected activities about persistent, discriminatory, violent, hostile, threatening harassment she continuously suffered and was targeted with by her Harassing Coworker - Kecia Barnhill (who is Caucasian/White)

- Occurring on and around November 2, 2022 - THE PLAINTIFF was subjected to character assassination through deliberate repeated Defamation and Slander spoken to her other coworkers and management team directly from District Manager - Chris Richardson (DEFENDANT) and FedEx Office and Print Services, Inc. Human Resources Advisor - Joesph Davison. The Retaliation in the form of Defamation and Slander left her with a tarnished reputation, humiliation, isolation from her peers, embarrassment, frequent migraines, crippling emotional distress that caused her to begin experiencing severe anxiety attacks which required emergency medical assistance, depression, intense crying spells, withdrawal from graduate school, loss of enjoyment in life, and overwhelming psychological trauma all of which has harmed her and damaged and hindered her life. THE PLAINTIFF's reputation was harmed so badly (in retaliation) that one of her Assistant Mangers (who FedEx Office and Print Services, Inc. defamed THE PLAINTIFF to) refused to provide a reference for her for a scholarship **ON AUDIO RECORDING** and proceeded to call her a "source of drama" for making repeated complaints to the FedEx Office and Print Services, Inc. Human Resources department for

(what he was inaccurately told by FedEx Office and Print Services, Inc.) was for NO valid, true, or legitimate reason - occurring on December 28, 2022. Another Assistant Manager (who FedEx Office and Print Services, Inc. also defamed THE PLAINTIFF to) told her **ON AUDIO RECORDING** that (because of how District Manager - Chris Richardson (DEFENDANT) deliberately misled told him about THE PLAINTIFF's repeated complaints being baseless and a waste of everyone's time) that he regarded THE PLAINTIFF as having poor work ethic, a bad attitude, and being a person who "takes things the wrong way" - occurring on December 17, 2022.

- THE PLAINTIFF was repeatedly psychologically abused by her Store Manager - Justyn Hersma (DEFENDANT) who often gaslit her regarding her fear and anxiety about experiencing workplace discrimination, workplace violence, and workplace retaliation. Store Manager Justyn Hersma (DEFENDANT) literally laughed at THE PLAINTIFF when she informed him that the stalking event by her Harassing Coworker - Kecia Barnhill had her frightened and alarmed. THE PLAINTIFF begged Justyn to help her because she was unsettled by her harasser's persistent "hostile fixation" on her. Occurring on October 17, 2022 **ON AUDIO RECORDING** - Justyn responds by BALKING at THE PLAINTIFF, **"YOU have a fixation on HER fixation! Which is a fixation too! It's like the kids say it I'm rubber, you're glue! You can chose to LET IT GO! YOU HAVE TO ACQUIRE SOME THICKER SKIN…You just haven't been as exposed to a variety of people! IT'S YOUR PERCEPTION ISSUE!"**

- THE PLAINTIFF was repeatedly dismissed by her Store Manager - Justyn Hersma (DEFENDANT) who often told her that her that reporting the violent, discriminatory harassment was immature, juvenile, and huge a waste of management and FedEx Office and Print Services, Inc. Human Resource's time. Occurring on August 1, 2022 - He informed her in order to receive a promotion that she was more than qualified for she had to agree to show "maturity"…**he defined her "maturity" as her agreeing to relinquish her civil right to participate in protect activities** and agree to not filing anymore HR complaints about the abusive workplace conduct she was facing no matter how it continued to escalate in order to receive any promotions even though she was already qualified for the promotions.

**2.) 42 U.S.C. §1981 - Race Discrimination and Opposing Race Discrimination**

**Facts & Details: (supported by direct evidence)**

**In Patterson v. McLean Credit Union, 491 U.S. 164 (1989), the Supreme Court's decision provided the clause that to make and enforce contracts" in Section 1981 "includes the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). A federal law prohibiting discrimination on the basis of race, color, and ethnicity when making and enforcing contracts. Section 1981 specifically grants all individuals within the US jurisdiction the same rights and benefits as "enjoyed by white citizens". Courts have interpreted Section 1981 to apply to the employment context, including at-will employment. Section 1981 also prohibits retaliation.**

The Plaintiff had the employee right as a part of the contractual relationship between her and the employer to enjoy and benefit from her employment the same way in which her white coworkers were given the privilege.

FedEx Policy Strictly Prohibits Discrimination, Retaliation, and Harassment and as can be found in the FedEx Team Member Handbook. As an employee of FedEx Office and Print Services, Inc. the Plaintiff (and also Brock and Bracy) was not allowed access to these rights as listed by FedEx Office and Print Services, Inc. *""Each team member has the right to work in a professional atmosphere that promote equal employment opportunities and is free from discrimination, harassment, and abusive conduct. Therefore, FedEx Office strictly prohibits unlawful discrimination, abusive conduct, and harassment within our premises or outside our premises where company activity occurs…This policy applies to all FedEx Office Team Members, consultants, contractors, vendors, and customers." - FedEx Team Member Handbook (pgs 16-17)* *(See next page)*

# FEDEX TEAM MEMBER HANDBOOK PAGE 16

## Policy Prohibiting Discrimination and Harassment

FedEx Office is committed to a work environment in which all team members are treated with respect and dignity. Each team member has the right to work in a professional atmosphere that promotes equal employment opportunities and is free from discrimination, harassment, and abusive conduct. Therefore, FedEx Office strictly prohibits unlawful discrimination, abusive conduct, and harassment, including sexual harassment. This policy applies to unlawful discrimination, harassment, and abusive conduct within our premise or outside our premise where company activity occurs, such as on a business trip, at a FedEx Office social event, or in any other manner that still has an impact on the workplace, such as through the use of social media. This policy applies to all FedEx Office team members, consultants, contractors, vendors, and customers.

### Unlawful Discrimination

Any form of unlawful discrimination, including that based on race (including hair texture and protective hairstyles), creed, age, sex, gender, physical or mental disability, sexual orientation, gender identity and gender expression (including transgender status), ancestry, sexual and reproductive health, pregnancy, perceived pregnancy, medical condition (including sexual and reproductive health decisions, pregnancy, childbirth, lactation, and related medical conditions), marital status, familial status, caregiver status, color, religion, uniformed service, veteran status, Civil Air Patrol status, national origin, citizenship status, genetic information, or any other characteristic protected by applicable local, state, or federal law is strictly prohibited.

### Sexual Harassment

Sexual harassment is one type of discrimination, and is illegal under local, state, and federal laws. For purposes of this policy, sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, and other statements or actions of a sexual or gender-based nature (whether or not motivated by sexual desire and regardless of whether it involves members of the same sex) when:

- Any behavior of a sexual nature which also involves coercion, abuse of authority, or misuse of an individual's position;
- Submission to such conduct is, either explicitly or implicitly, made a term or condition of a team member's employment;
- Submission to or rejection of such conduct by a team member is used as the basis for employment decisions affecting such team member; or
- Such conduct has the purpose or effect of unreasonably interfering with a team member's work performance or creating an intimidating, hostile, or offensive working environment.

Sexual harassment may include a range of subtle, and not so subtle, behaviors. The following list of behaviors, which may be perceived as harassing, is not intended to be all inclusive:

- Threatening to, or actually making, job decisions, such as employment benefits, discharge, demotion, or reassignment, if sexual favors are not granted
- Demanding sexual favors in exchange for favorable or preferential treatment
- Unwelcome physical contact, touching, assault, or impeding or blocking movements
- Unwelcome and/or repeated flirtations or sexual advances
- Propositions or advances
- Leering, whistling, or improper gestures
- Gender or sex-based jokes, pranks, tricks, or horseplay
- Unwelcome comments about one's appearance
- Sexual jokes or use of sexually explicit or offensive language, either verbally or in writing, including email or text messages
- The display in the workplace of sexually suggestive objects or pictures, including material from the Internet



# FEDEX TEAM MEMBER HANDBOOK PAGE 17



### Other Types of Harassment

Harassment on the basis of a team member's race, creed, age, sex, gender, physical or mental disability, sexual orientation, gender identity, gender expression, ancestry, pregnancy, perceived pregnancy, medical condition, marital status, familial status, caregiver status, color, religion, uniformed service, veteran status, national origin, genetic information, or any other characteristic protected under applicable local, state, or federal law is also strictly prohibited.

Other types of harassment may include a range of subtle, and not so subtle, behaviors. The following list of behaviors, which may be perceived as harassing, is not intended to be all inclusive:

- Name calling, slurs, or negative stereotyping
- Offensive or vulgar jokes or pranks
- Mocking, ridiculing, or mimicking another's culture, accent, appearance, or customs
- Threatening, intimidating, or engaging in hostile or offensive acts
- Posting or circulating written, graphic, or electronic material that denigrates or shows hostility or aversion toward an individual or group
- Displaying any offensive or discriminatory drawing, object, picture, or other symbol, including material from the internet, which adversely portrays a protected class and is determined by Human Resources, in consultation with the Legal Labor and Employment Group, to interfere with a reasonable team member's ability to perform their job.

### Abusive Conduct or Bullying

Abusive conduct or bullying is the malicious infliction of verbal or physical conduct that a reasonable person would find hostile, offensive, and unrelated to FedEx Office's legitimate business interests. A single act may not constitute abusive conduct or bullying unless it is especially severe or pervasive. The following list of behaviors, which may be perceived as abusive conduct, is not attended to be all inclusive:

- Repeated infliction of verbal abuse such as derogatory remarks, insults, and epithets
- Verbal or physical conduct that a reasonable person would find threatening, intimidating, or humiliating
- Sabotage or undermining of a team member's work performance
- Willful and conscious disregard of the rights or safety of others

### Reporting Unlawful Discrimination, Harassment, or Retaliation

FedEx Office requires the prompt reporting of all perceived incidents of discrimination, harassment, abusive conduct, or retaliation regardless of the offender's identity or position. A team member who believes they have been a victim of unlawful discrimination, harassment, abusive conduct, or retaliation must immediately report the incident to their direct supervisor, a Human Resources Representative, or the FedEx Alert Line. Team members should also utilize this reporting procedure to promptly report actual or potential instances of harassment, discrimination, or abusive conduct against other team members.

Team members should not feel hesitant or embarrassed about reporting discrimination, harassment, or abusive conduct. It is important to remember that FedEx Office encourages good faith complaints of discrimination, harassment, or abusive conduct. The company is dedicated to making sure that the work place is productive and free from discriminatory and harassing conduct. The company can only achieve this goal if team members cooperate in reporting all possible violations of this policy.

Any supervisor who receives a complaint of harassment, discrimination, abusive conduct, or retaliation from a team member shall immediately notify their Human Resources Representative of such complaint. Failure by the supervisor to report the allegation will result in appropriate disciplinary action, up to and including termination of employment.

Any team member who knowingly makes a false report or complaint of discrimination, harassment, abusive conduct, or retaliation may be subject to disciplinary action, up to and including termination of employment.

**Section 1981 cases, and others that currently utilize only the "but-for" causation standard, it is worth noting that the standard does not require that the protected characteristic (e.g., age) be the one and only cause of the adverse action. Rather, the individual must prove that the protected characteristic was a but-for cause. In other words, but-for the individual's protected characteristic, the employer would not have taken the adverse employment action. The existence of other, legitimate reasons does not necessarily end the inquiry.**

The Supreme Court has defined retaliation as an intentional act in response to a protected action. *Jackson v. Birmingham Bd. of Educ*., 544 U.S. 167, 173-74 (2005). A statute that prohibits intentional discrimination implicitly prohibits acts of retaliation for complaints about or opposition to discrimination. See *Sullivan v. Little Hunting Park, Inc*., 396 U.S. 229, 237 (1969) (a prohibition on racial discrimination includes an implicit prohibition on retaliation against those who oppose the discrimination).

After filing her EEOC Charge in December 2022 and then also filing her January 2023 complaint with FedEx HR Headquarters that she was facing racial discrimination and retaliation at FedEx Gaylord, the Plaintiff assisted in training a new Assistant Manger, Linzi Van Meter, who transferred to FedEx Gaylord with new Store Manager, Mike Askins in February or March 2023.

Soon after helping to train Linzi Van Meter, integral and material responsibilities of the Plaintiff's position as Lead Consultant (specifically large production order quality control and management of large production order formatting) were significantly reduced and taken over by those in management positions: Stewart Wertenberger, Linzi Van Meter, and Mike Askins

leaving her with significantly less responsibilities aligned with her position as Lead Consultant which constituted as a demotion and yet another adverse employment action.

**Again, one of the elements that must be present in retaliation claims must be a "causal connection," which is a link between the protected conduct and the harmful action to the employee that followed.**

The Plaintiff's vast reduction in job responsibilities as Lead Consultant follows **immediately after** she exercised her civil right to participate in protected actives to report facing Discrimination and Retaliation at FedEx Gaylord to FedEx Human Resources Headquarters, and **immediately after** filed her EEOC charge against FedEx, and **within just a few months of Richardson (Defendant) threatening the Plaintiff with demotion** (where he told her **verbatim** he would have "no need for her remain in her role (as Lead Consultant)" **ON AUDIO RECORDING** if she did not endure the Discriminatory conditions of her employment).

The conditions of the black employees the PLAINTIFF's (as well as Brock, Bracy) employment were unlawfully altered by the Defendants who specifically told her countless times **ON AUDIO RECORDING** that the conditions of her employment, getting pay raises, and receiving promotions, and also not getting demoted actually NOW included allowing her white Harasser - Barnhill to continue to torment her with severe, pervasive violence and that she was to take, be a victim of, and be on the receiving end of the continuous traumatic abuse and unwanted touching in silence as the direct evidence/audio recordings prove which is a discriminatory

retaliatory “term” and “condition” of the employment agreement that the white employees did not also have to face.

As Store Manager - Hersma (Defendant) informed the Plaintiff that the conditions of the her ability to get pay raises and receive promotions/advance in her employment also were unlawfully altered by the Defendants who told her that in order to receive the promotion (to Lead Consultant from General Store Consultant) that she was already regularly executing the responsibilities for (and the pay raise that came with the promotion) and that she was already told she was the best candidate for that she was to give her word to Hersma - Defendant that she would relinquish her civil right to participate in protected activities - specifically not filing or reporting anymore complaints about the violent torment she continued to face from Barnhill in the workplace which is a discriminatory retaliatory “term” and “condition” of the employment agreement that the white employees did not also have to face.

The Plaintiff was given direction by her Store Manager Hersma (Defendant) to “get distance” from Harasser - Barnhill by working in the FedEx Gaylord shipping dock and making extra packages deliveries throughout the Gaylord Texan Resort and Convention Center.

Under this direction, the Plaintiff was given harsher, less desirable, more strenuous, physically exerting, physically exhaustive tasks in an environment that was insect riddled, dust covered, and was not climate controlled (often either very hot or very cold) in the shipping dock loading and unloading 18-wheeler trucks, processing packages that were often more than 100 pounds, and using heavy machinery while white Harasser - Barnhill was allowed to maintain space in the much more pleasant, relaxed, climate controlled office environment of the business center.

Also, the Plaintiff was also given direction by Hersma to make more package deliveries throughout the hotel/Gaylord Texan leaving the Plaintiff having to push, load, and unload large metal carts of literally hundreds and hundreds of pounds of boxes, crates, and sometimes pallets of equipment and other shipments once again undesirable tasks white Harasser - Barnhill was given the privilege not to have to participate in.

The Plaintiff - who was more suited to work in the Business Center with her background in Graphic Design, Customer Service, outstanding rapport with the Gaylord Texan event planning managers, and history of helping to train FedEx Gaylord employees especially on the FedEx computer production design system known as the "PPA" - felt as though she was being forced to do extremely demanding "sweat work" and treated "like a mule" while her white Harasser - Barnhill was allowed to enjoy light, cool, feminine, delicate conditions. The definition of "adverse employment action" for purposes of a disparate treatment claim comes from *Chuang v. University of California Davis, Board of Trustees, 225 F.3d 1115, 1126 (9th Cir.2000)* finding that "[t]he removal of or substantial interference with work facilities important to the performance of the job constitutes a material change in the terms and conditions of a person's employment".

Barnhill and Westbrook were given the privilege and unabashed free-reign to abuse their black coworkers (Sanders, Brock, and Bracy) and the black coworkers were the ones designated to be abused in silence with the "terms" and "conditions" of their employment altered to endure severe pervasive harassment, have pay raises and promotions withheld, and their civil rights and employee rights - like the Plaintiff having to relinquish her civil right to participate in protected activities - infringed upon repeatedly or else as the black employees were repeatedly informed

they would be the ones to face adverse employment actions. The harassment of all the black employees being severe and pervasive enough to effect the terms and conditions of their employment in and of itself is discrimination. "When harassment is severe or pervasive does it transform the work environment into one "heavily charged" with discrimination, thereby changing the terms and conditions of employment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986). Thus, the question in hostile work environment cases is whether harassment is so severe or pervasive that the terms, conditions, or privileges of employment have been altered. *Ibid*.

**BUT-FOR CAUSATION**

***Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969) (a prohibition on racial discrimination includes an implicit prohibition on retaliation against those who oppose the discrimination).**

FedEx Office and Print Services, Inc. failed to promote, retaliated against, constructively discharged, reduced the job responsibilities, assigned harsher undesirable tasks to the Plaintiff, permitted violent abuse to happen to the Plaintiff that was severe, pervasive harassment enough to effect the terms of her employment in acts of discrimination against the Plaintiff and if she was not a member of a protected class - as an African-American - the Defendants' would not have Retaliated against her.

Her status as a member of a protected class was a motivating factor in the Defendants decisions as they delegated her to tasks that made her feel "like a mule" to leave the better working environment for the white Harasser - Barnhill to enjoy.

The Plaintiff's race was a motivating factor in withholding her promotion and replacing her with a white coworker. Her race played a part in the Defendant's decision to withhold the

promotion from the Plaintiff as she was equally qualified with the white coworker (Stewart Wertenberger) and yet he was favored over her under nearly identical circumstances.

The Defendants' acted deliberately to discriminate against the Plaintiff. The Defendants are **ON AUDIO RECORDING** admitting that they were well aware that the Plaintiff was being "targeted" by white Harasser - Barnhill, they were aware that it (the violent, severe, pervasive harassment) "was not going to stop," the they were aware the Plaintiff was the victim facing workplace violence, and that the Plaintiff's employment hinged on enduring the abuse as it continued endlessly.

The Defendants treated all three black employees (Sanders, Brock, and Bracy) with these same standards once they were targeted by white employees. A pattern arose where white employees were permitted to abuse black employees and it became a condition of the black employees employment to **"JUST ACQUIRE THICKER SKIN"** - as the Store Manager - Hersma Defendant told the Plaintiff verbatim **ON AUDIO RECORDING** - **or else** adverse employment actions would occur to the black employees.

**Tangible Employment Actions - Retaliation**

The Supreme Court defined "tangible employment action" in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742. 761 (1998), stating, "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."

The Plaintiff's race was a motivating factor for the Defendant's action. The Plaintiff is not required to prove that her race was the sole motivation or even the primary motivation for Defendant's decision. The Plaintiff need only prove that her race played a motivating part in

defendant's decision even though other factors may also have motivated the Defendant, such as Retaliation including exposing the Plaintiff to unsafe hostile working conditions that included unwanted touchings and acts of physical intimidation which left the Plaintiff "in fear", defaming the Plaintiff to her peers, withholding promotions, and constructively discharging her. *Green v. Brennan*, 578 U.S. 547, 555 (2016) (stating that constructive discharge has two elements – discrimination by the employer to the point where a reasonable person would have felt compelled to resign, and actual resignation).

"When a person reasonably believes that he or she has been the victim of discrimination that Title VI or other federal law prohibits, or has witnessed another person being discriminated against, that person should be able to report the alleged discrimination without fear of retaliation or fear that doing so will further jeopardize accessing benefits or services." - Department of Justice (DOJ), see also *Peters v. Jenney*, 327 F.3d 307, 318 (4th Cir. 2003); *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 83 (D.D.C. 2003); *Gutierrez v. Wash. Dep't of Soc. & Health Servs.*, CV-04-3004-RHW, 2005 WL 2346956, at *5 (E.D. Wash. Sept. 26, 2005)

**Supporting Events/Evidence for this charge:**

- THE PLAINTIFF's Store Manager - Justyn Hersma (DEFENDANT) repeatedly reiterated threats **ON AUDIO RECORDING** that **if** THE PLAINTIFF could not endure the violent, discriminatory harassment she was facing in her workplace in silence that she would certainly face forcible transfer from her job to as less desirable location, a reduction in work hours (and her pay) to effectively deter her from exercising her civil right to engage in a protected activity which is reporting discriminatory harassment from her white coworker which had escalated to stalking, physical acts of intimidation, unwanted touching. **Occurring on October 17, 2022 -**

**Justyn Hersma threatened THE PLAINTIFF verbatim ON AUDIO RECORDING that there were, "Only two options: If [THE PLAINTIFF] continued complain about the ongoing harassment then [THE PLAINTIFF] would definitely face forcible transfer or having her work hours/pay reduced OR [THE PLAINTIFF] could stop complaining about the harassment even if it does NOT stop and just ACQUIRE THICKER SKIN and LEARN TO ENDURE IT." He then reinforced the threat to [THE PLAINTIFF] by saying verbatim, "Let's say it [the violent, discriminatory harassment] does not stop? It still comes down to those two options."**

- Occurring on November 2, 2022 - THE PLAINTIFF's District Manager - Chris Richardson (DEFENDANT) threatened THE PLAINTIFF **ON AUDIO RECORDING** that if she could not endure the violent, discriminatory harassment she was facing in her workplace that she would certainly face demotion from her promoted position as a Lead Consultant (after she was promoted after giving Hersma - Defendant her word that she would relinquish her civil right to participate in protected activities) up to and including **District Manager - Chris Richardson (DEFENDANT) giving her an order/demand to work in more frequent close, isolated proximity with her white Harassing Coworker - Kecia Barnhill (who had tormented her with violence for over a year) OR ELSE he had "NO NEED" for THE PLAINTIFF to remain in her role. A discriminatory retaliatory "term" and "condition" of the employment agreement for the black Plaintiff that the white employees did not have to face ON AUDIO RECORDING.**

- Occurring on December 19, 2022 - THE PLAINTIFF's FedEx Office and Print Services, Inc. Human Resources Advisor - Joesph Davison scolded THE PLAINTIFF for asking her Assistant Manager - Stewart for advice regarding experiencing unwanted touching by white Harassing Coworker - Kecia Barnhill. **FedEx Office and Print Services, Inc. HR Advisor - Joseph Davison ordered/demanded ON AUDIO RECORDING that THE PLAINTIFF was specifically NOT to "be chatting about this [the unwanted touching] with other team members".**

- Occurring on May 18, 2023 - FedEx Office and Print Services, Inc. Human Resources Advisor - Janelle Cosey sent THE PLAINTIFF a letter informing her that FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) CLOSED an internal investigation looking into the retaliation, defamation, coercion, and intimidation by her direct supervisors and the persistent threatening discriminatory harassment towards her. **The Letter stated that nothing would change, they would be offering NO protection, and that THE PLAINTIFF would be forced to continue facing the torment from her direct supervisors and her harassing coworker with the Human Resource Department's decision to allow her workplace to be unsafe, forcing her to work in intolerable, violent, hostile conditions as a condition of her continued employment.** THE PLAINTIFF was made to feel completely unsafe and completely unprotected in her workplace by her FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) due the constant retaliation and FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) ALLOWING AND PERMITTING her to continue to be harassed and subjected to workplace violence which was so pervasive and severe that it altered

the conditions of her employment, FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) not addressing the harassment or the violence, and not protecting THE PLAINTIFF from intimidation, defamation, threats, gaslighting/psychological abuse, and coercion by THE PLAINTIFF's direct supervisors. Because FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) made the conditions of her employment so unsafe, stressful, mentally unhealthy, and intolerable that she was forced to submit to CONSTRUCTIVE DISCHARGE - occurring on May 18, 2023 - from FedEx Office and Print Services, Inc. for the sake of her safety and mental health.

- Occurring on November 2, 2022 - When THE PLAINTIFF explained how alarming and unsettling the stalking event by Harassing Coworker - Kecia Barnhill had been for her and another African-American team member, District Manager - Chris Richardson (DEFENDANT) **ignored it completely by immediately changing the subject, laughing about the logo on THE PLAINTIFF's face mask. Chris then shrugged and told THE PLAINTIFF, "Well, you're not going to like everyone you work with….I gotta have happy stockholders."**

- Occurring on and around November 2, 2022 - District Manager - Chris Richardson (DEFENDANT) deliberately Defamed and Slandered THE PLAINTIFF's character and destroyed her reputation causing her personal harm by telling falsehoods with malice to multiple other coworkers of THE PLAINTIFF casting doubt about the validity of her repeated complaints regrading the ongoing harassment and as a resulting casting doubt on her work

ethics, honesty, and humiliating her in front of her peers further traumatizing the PLAINTIFF. District Manager - Chris Richardson (DEFENDANT) intentionally misled her coworkers about her character, her work ethic, her intentions, and her honesty. The Defamation and Slander was particularly **distressing and traumatic** for THE PLAINTIFF.

- **(ALSO, INCLUDED IN THIS CHARGE ARE ALL PREVIOUSLY LISTED FACTS, DESCRIPTIONS, DETAILS, AND CHARGES FROM SECTION: TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 - RACE DISCRIMINATION & RETALIATION)**

**STATE FEDERAL LAWS VIOLATED BY EMPLOYER:**

**1.) TX CIV PRAC & REM § 142.001 Negligent Retention, Supervision, Gross Negligence: Facts & Details: (supported by direct evidence)**

*"Respondeat superior,"* translated as "let the superior make answer[,]" is a legal doctrine holding an employer liable for an employee's wrongful acts committed within the scope of employment. Under *respondeat superior*, an employer may be vicariously liable for the negligent acts of its employee if the employee's actions are within the course and scope of employment. *Painter v. Amerimex Drilling I, Ltd*., 561 S.W.3d 125, 128-29, 139 (Tex. 2018).

**BUT-FOR CAUSATION**

*Respondeat superior* claim standards are met with the Plaintiff's charge in the case at the time of the negligent conduct:

The Defendant/employer's worker (Barnhill) (1) falls within the legal definition of "employee" and (2) was acting in the course and scope of her employment. *Id* A worker is an

employee when her employer has "the overall right to control the progress, details, and methods of operations of the work." *Id*. An employee acts within the course and scope of her employment when performing tasks generally assigned to her in furtherance of the Defendant/employer's business (a) with the employer's authority and (b) for the employer' benefit. *Id*.

There are specific requirements that must be met in order for an employer to be held accountable for the actions of their staff members:

The "worker" must have been acting as an agent of the employer (or on behalf of the employer) at the time of the incident(s)

The "worker" must have been acting within the scope of her duties and/or acting for the benefit of the employer at the time when she committed a negligent or wrongful act giving rise to a tort claim

An employer is liable for negligent hiring when a plaintiff proves that an employer hired a "worker" known to be unfit or incompetent (or who they should have known was unfit or incompetent), causing an undue risk of injury to others such as subjecting an employee to severe, traumatic pervasive harassment, unwanted touching, multiple acts of physical intimidation, staring the Plaintiff down several times in a threatening manner, throwing false accusations against the Plaintiff, charging at the Plaintiff, throwing herself between the Plaintiff and a computer. The proof is available **ON AUDIO RECORDING.**

THE PLAINTIFF told the Defendants repeatedly that Harassing Coworker - Kecia Barnhill's increasingly volatile, abusive, and tormenting behavior was making THE PLAINTIFF overcome with fear, stress, and anxiety to just come into her own place of employment. FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) still took **NO ACTION** to correct the workplace violence that continuously occurred while the "worker"/Barnhill abused the Plaintiff

creating a hostile, distressing, unsafe work environment on employer premises and then required the Plaintiff to remain in frequent, close, isolated proximity with the source of the violence and distress or else she would face additional adverse employment actions.

**Supporting Events/Evidence for this charge:**

- Occurring on or around September 9, 2022 - After THE PLAINTIFF reported to Store Manager - Justyn Hersma (DEFENDANT), FedEx Office and Print Services, Inc. Human Resource Advisor - Joseph Davidson, and District Manager - Chris Richardson (DEFENDANT), that her Harassing Coworker - Kecia Barnhill had charged at her and violated her personal space in a hostile and aggressive manner……**Store Manager - Justyn Hersma (DEFENDANT) told THE PLAINTIFF that "he had been through this type of situation before" and that <u>he knew that, "…It [the violent, persistent workplace harassment] was NOT going to stop</u>"** so Store Manager - Justyn Hersma (DEFENDANT) told THE PLAINTIFF she would just have to learn to let it all go as it continued. He specifically used the euphemism **<u>ON AUDIO RECORDING</u>**, "just let it (the harassment that was severe, pervasive enough to altered the conditions of the Plaintiff's employment) roll off, like water off a duck's back". Store Manager - Justyn Hersma (DEFENDANT) then threatened THE PLAINTIFF repeatedly that if "they" (FedEx management and FedEx HR) had to hear about any of these complaints ever again that THE PLAINTIFF would definitely face forcible transfer or having her work hours/pay reduced **<u>ON AUDIO RECORDING.</u>**

- Occurring on September 7, 2022 - Store Manager - Justyn Hersma (DEFENDANT) acknowledged THE PLAINTIFF's fear of her Harassing Coworker - Kecia Barnhill and still

the FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) took **NO ACTION** to correct the situation. Store Manager - Justyn Hersma (DEFENDANT) **ON AUDIO RECORDING** literally told THE PLAINTIFF **"I can tell you're scared. I can see it on your face and I can only see half of your face because you're wearing a mask!"** FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) still did nothing to stop the harassment from continuing and then maliciously retaliated against THE PLAINTIFF.

- FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) saw on FedEx Office and Print Services, Inc. store surveillance footage Harassing Coworker - Kecia Barnhill charge at THE PLAINTIFF while giving THE PLAINTIFF a hostile interrogation in an act of physical intimidation occurring on or around August 29, 2022. Despite this FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) took **NO ACTION** to correct the Harassing Coworker - Kecia Barnhill's behavior and further retaliated against THE PLAINTIFF by requiring THE PLAINTIFF to endure the harassment in more frequent, close isolated proximity, defaming/slandering THE PLAINTIFF, psychologically abusing THE PLAINTIFF, and Constructively Discharging THE PLAINTIFF.

- FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) saw on FedEx Office and Print Services, Inc. store surveillance footage Harassing Coworker - Kecia Barnhill charge at THE PLAINTIFF, throw herself between THE PLAINTIFF and a computer screen, and reach across THE PLAINTIFF invading THE PLAINTIFF'S personal space in a hostile, aggressive manner occurring on or around August 29, 2022. Despite this FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) took **NO ACTION** to correct the Harassing Coworker -

Kecia Barnhill's behavior and further retaliated against THE PLAINTIFF by requiring THE PLAINTIFF to endure the harassment in more frequent, close isolated proximity, defaming/ slandering THE PLAINTIFF, psychologically abusing THE PLAINTIFF, and Constructively Discharging THE PLAINTIFF.

- FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) saw on FedEx Office and Print Services, Inc. store surveillance footage Harassing Coworker - Kecia Barnhill **poked and jabbed THE PLAINTIFF under THE PLAINTIFF's breast - a very personal and private area -** with unwanted touching and physical harassment occurring on November 28, 2022. **FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) then dismissed the event despite <u>unwanted touching</u> being listed specifically as a act of "Workplace Violence" in the FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT)'s Violence Prevention Program Documents: "Code of Conduct", "FedEx 30 Indicators of Workplace Violence," and "FedEx's Indicator of a Troubling Situation"**. FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) continued to **allowed her to have unrestricted and unsupervised access to THE PLAINTIFF despite subjecting THE PLAINTIFF to multiple instances of unwanted touching** which is an act already specifically classified by FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) as escalated "Workplace Violence". FedEx Office and Print Services, Inc. Human Resources then demanded THE PLAINTIFF not discuss the unwanted touching and workplace violence with her managers and take more abuse in silence.

- Occurring on October 17, 2022 - **FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) knew that another African-American employee complained that Harassing Coworker - Kecia Barnhill tried to FORCE HIM to help her STALK and keep tabs on THE PLAINTIFF down to the literal minute** and FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) still took **NO ACTION** to correct the harassment or even to remove Harassing Coworker - Kecia Barnhill from THE PLAINTIFF's vicinity/workplace even after THE PLAINTIFF requested that her harasser be - at the very least - transferred to a different FedEx store/location. The **FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT)'s Violence Prevention Program Manager's Guide states verbatim, "STALKING or following others or CLOSELY MONITORING their whereabouts when there is no legitimate business reason for doing so" is SPECIFICALLY listed as "PROHIBITED BEHAVIOR" directly violating the Corporate Security Policy.**

**Instead of taking any of the mitigating efforts listed in the FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT)'s Violence Prevention Program Manager's Guide, Hersma - Defendant excused the stalking by Barnhill and retaliated again against the Plaintiff ON AUDIO RECORDING.**

**ScreenCapture: Source FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT)'s Violence Prevention Program Manager's Guide**

## Workplace Violence Prevention

**Policy Status:** Active

**Supersedes:** October 8, 2014

**Policy Owner:** Managing Director of Corporate Security

**Date Last Updated:** September 21, 2018

## 1.0 Purpose

The safety of all team members and preventing workplace violence is a top priority. FedEx Office is committed to maintaining a safe and secure work environment free from violence, threats of violence, harassment, intimidation and other disruptive behavior.

## 2.0 Background

FedEx Office has adopted a policy as it relates to workplace violence. Violence, verbal or physical threats, harassment, intimidation or other disruptive behavior in the workplace will not be tolerated. Retaliation against a person who makes a complaint regarding violent behavior or threats of violence is also prohibited. All reported incidents or threats of workplace violence will be taken seriously, thoroughly investigated and addressed appropriately. Any team member, who exhibits violence or threatens, harasses or abuses another team member or any other individual in the workplace, may be subject to criminal prosecution and will be subject to disciplinary action, up to and including termination of employment. Disciplinary action may also be taken against team members who are convicted or fail to report a conviction of a workplace violence-related crime or who have had a protective injunction entered against them in a domestic violence situation. Every threat of violence is serious and must be treated as such.

## 3.0 Policy

### 3.1 Prohibited Behavior

Prohibited behavior in the workplace may include, but is not limited to the following list directed at or by a team member, or other individual in the workplace:

- Direct threats of harm to a person or property
- Implications or suggestions of violence
- Physical restraint or confinement of others
- Expressing grudges intentions to retaliate or "get even" with a team member or other individual
- Throwing, hitting, or breaking objects in a threatening manner



**Corporate Security Policy**

FedEx Office.

- Stalking or following others or closely monitoring their whereabouts when there is no legitimate business reason for doing so
- Possession of weapons on company property or while engaged in activities for company in other locations or at company-sponsored events
- Blatant or intentional disregard for the safety or well-being of others.
- Commission of a violent felony or misdemeanor on company property
- Loud, disruptive or angry behavior or language that is clearly not part of the typical work environment
- Any other act that a reasonable person would perceive as constituting a threat of violence

- FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) saw on FedEx surveillance footage Harassing Coworker - Kecia Barnhill strike and hit an Assistant Manager and **made excuses for her physical act of violence and then denied that it happened at all to the EEOC despite there being two (2) first hand witnesses to the event occurring on September 5, 2022. FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) continued to allowed her to have access to THE PLAINTIFF** despite THE PLAINTIFF repeatedly expressing in clear terms **literal fear** of being in Harassing Coworker - Kecia Barnhill's presence.

- FEDEX OFFICE AND PRINT SERVICES, INC. (DEFENDANT) KNEW that the harassment was violent, persistent, continuous, rapidly escalating, and that it was NOT going to stop (as Store Manager - Justyn Hersma (DEFENDANT) admitted) and FedEx Office and Print Services, Inc. let it continue unsupervised and then repeatedly **suppressed THE PLAINTIFF's right to report the behavior** through protect activities and request help from her supervisors and the FedEx Office and Print Services, Inc. HR department.

**2.) TX LAB § 21.051. Discrimination by Employer**

**Facts & Details: (supported by direct evidence)**

(All previously listed facts, descriptions, details, and charges from sections: Title VII of the Civil Rights Act of 1964 - Race Discrimination & Retaliation; 42 U.S.C. §1981 - Race Discrimination and Opposing Race Discrimination; TX CIV PRAC & REM § 142.001 Negligent Retention, Supervision, Gross Negligence)

**3.) TX LAB § 21.055. Retaliation**

**Facts & Details: (supported by direct evidence)**

(All previously listed facts, descriptions, details, and charges from sections: Title VII of the Civil Rights Act of 1964 - Race Discrimination & Retaliation; 42 U.S.C. §1981 - Race Discrimination and Opposing Race Discrimination; TX CIV PRAC & REM § 142.001 Negligent Retention, Supervision, Gross Negligence)