**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IVANA SANDERS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-cv-00333-O-BP** |
| | § | |
| **FEDERAL EXPRESS,** *et al.***,** | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support filed by FedEx Office and Print Services, Inc. ("FedEx"), Christian Richardson, and Justyn Hersma (collectively "Defendants") on November 12, 2024 (ECF No. 32); the response that Ivana Sanders ("Sanders") filed on December 4, 2024 (ECF No. 34); and the Defendants' reply filed on December 18, 2024 (ECF No. 36). After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT IN PART** and **DENY in PART** FedEx's Motion to Dismiss (ECF No. 32). Judge O'Connor should (1) **DISMISS** Sanders's race discrimination claims; (2) **DENY** the Motion to Dismiss as to Sanders's claim for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and § 21.055 of the Texas Commission on Human Rights Act ("TCHRA"); and (3) **DISMISS** Sanders's state law claims for negligent retention, supervision, and gross negligence.

**I.     BACKGROUND**

Sanders is an African American woman who claims that FedEx and her managers violated Title VII, 42 U.S.C. § 1981, and TCHRA § 21.055 throughout her employment from August 18,

2021 to June 8, 2023. ECF No. 28-4 at 1. She alleges that she experienced "actions including Discriminatory Adverse Employment Actions and Tangible Employment Actions" resulting in "reduce[d] earning potential, promotions being withheld from her, a demotion, constructively discharged from her job" and a litany of other physical and psychological harms. *See id.*

Sanders asserts that she and two other African American employees were "allowed to be continuously tormented viciously and violently by white harassers." *Id.* at 3. She claims that she first complained about harassment to the FedEx human resources department ("HR") on March 16, 2022, and that FedEx denied her a promotion immediately after she made the complaint. *See id.* at 6. She states that her manager responded to her complaint by reassigning her to the shipping dock on May 26, 2022, so she could "get distance" from her alleged harasser. *Id.* at 5. This reassignment resulted in less desirable working conditions. She states that FedEx and her managers continuously did not promote her to Lead Consultant until the day after she agreed to refrain from making additional complaints. *See id* at 7.

Sanders asserts that she filed a Charge of Discrimination (the "Charge") with the Equal Opportunity Employment Commission ("EEOC") on December 3, 2022, and soon afterward, FedEx significantly reduced her responsibilities. *See id.* at 15. She filed another EEOC Charge on March 13, 2023. ECF No. 34 at 18. She received a letter on May 18, 2023, from FedEx indicating that it had closed an internal investigation into her complaints. *See* ECF No. 28-4 at 25. Because of this letter, Sanders felt unable to continue working under the existing conditions and "that she was forced to submit to a constructive discharge – occurring on May 18, 2023." *See id.* at 26. Sanders also alleges that FedEx employed her until June 8, 2023. *See id.* at 1.

FedEx moves to dismiss Sanders's claims of constructive discharge for failure to exhaust administrative remedies. *See* ECF No. 32 at 3 Sanders responds that she informed the EEOC

2

through written correspondence approximately six weeks after her last day of employment, and that there is no administrative exhaustion requirement to file a claim under § 1981. *See* ECF No. 34 at 18.

FedEx argues that Sanders's race discrimination claims are time barred and fail to state insufficient facts. *See* ECF No. 32 at 10-16. It also argues that Sanders failed to allege "an adverse employment action," relating to her claims about the two other employees. *Id.* at 13. Sanders responds that FedEx withheld her promotion continuously until August 2, 2022, and that as a result, her claim is not time barred under Title VII and the TCHRA. ECF No. 34 at 18-19 She further responds that her claims fall within the two-year period required under § 1987. *Id.* at 17. Sanders also argues that FedEx subjected her to adverse employment action through less desirable work assignments, denial of promotion, threats of demotion, and constructive discharge, after her she filed HR complaints and EEOC Charges. *Id.* at 13-16.

FedEx asserts that Sanders's retaliation claims fail because she did not suffer an adverse employment action, and that Sanders has not stated facts to show causal connection to a protected activity other than her conclusory statement that the connection existed. ECF No. 32 at 16-17. Sanders responds that FedEx withheld a promotion from her, and the short time between her HR complaint and FedEx's action demonstrates a causal connection. ECF No. 34 at 22-23.

Finally, FedEx asserts that Title VII preempts Sanders's claims for negligent retention, supervision, and gross negligence because they arise from the same allegations that underlie Sanders's discrimination claims under Title VII and the TCHRA. ECF No. 32 at 19-20. Sanders concedes that due to a recent case in this Court, "that it is fair and reasonable to dismiss the count of TX CIV PRAC & REM § 142.001." ECF No. 34 at 23.

## II.     LEGAL STANDARDS

### A.     Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a viable claim for relief, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff ... and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A statute of limitations may support dismissal under Rule 12(b)(6) when it is evident from the plaintiff's pleadings that the action is barred, and the pleadings fail to raise some basis for tolling or avoidance of the bar. *Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

### B.     Administrative exhaustion standards

The EEOC enforces employment discrimination claims brought under Title VII and other statutes. *See* 42 U.S.C. § 12117(a) (2025). Before a plaintiff can sue in federal court for violations of Title VII, "she must first file a timely charge with the EEOC, or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." *Dao v.*

4

*Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996);  *see also McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (discussing the requirement for Title VII claims).

A plaintiff must file a charge of discrimination with the EEOC within 180 days of the alleged incident of discrimination. *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295, 1304 (5th Cir. 1979) (holding that because plaintiff did not file a complaint with the EEOC within 180 days, her suit was time barred under 42 U.S.C. s 2000e-5(e)). However, if the discriminatory practice occurred in a state with a fair employment agency that grants relief, Title VII permits the complainant to file her charge with the state or local agency. *Fort Bend Cnty., Tex.* v. *Davis*, 587 U.S. 541, 543-44 (2019). The complainant then has 300 days following the challenged practice, or 30 days after receiving notice that state or local proceedings have ended, whichever is earlier, to file a charge with the EEOC. *Id.*

Likewise, to state a claim under the TCHRA, a plaintiff must file a charge of discrimination with the EEOC or the Texas Workforce Commission ("TWC") within 180 days after the alleged unlawful employment action. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004). Like Title VII, the TCHRA "administrative filing requirement is a mandatory statutory requirement that must be complied with before filing suit…." *Pequeno v. Univ. of Texas at Brownsville*, 718 F. App'x 237, 242 (5th Cir. 2018) (quoting *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 514 (Tex. 2012)).

A plaintiff satisfies the exhaustion requirement by filing a charge and receiving a "right-to-sue" letter from the EEOC or relevant state or local agency. *Dao*, 96 F.3d at 788 (discussing *Nilsen v. City of Moss Point, Miss.*, 621 F.2d 117, 120 (5th Cir. 1980)). Any resulting lawsuit is limited to the scope of the EEOC's investigation, reasonably expected to flow from the charge, and filed within a statutory timeframe. *Id.*; *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th

Cir. 1970). When determining if a complaint exceeds the scope of the EEOC proceeding, courts constrain their analysis to the facts in the administrative charge, right-to-sue letter, and complaint. *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). Although the resulting suit can involve "any kind of discrimination like or related to the charge's allegations," the charge must be sufficient to put the employer on notice of the plaintiff's allegations. *Id.*

A plaintiff fails to exhaust her administrative remedies by either foregoing the above process or asserting claims beyond the scope of the charge and right-to-sue letter. *Id.* "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain*, 519 F.3d at 274. Proper administrative exhaustion is not a technicality or procedural "gotcha," but rather an integral due process protection that affords defendants fair notice of potential claims. *McClain*, 519 F.3d at 272. A plaintiff must exhaust her available remedies "before seeking judicial relief" *Id.* at 273. A plaintiff's *pro se* status does not alter the analysis or otherwise turn this requirement into a suggestion. *See Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862, 863 (5th Cir. 1983); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-379 (5th Cir. 2002); *Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 478 (5th Cir. 1997). While not jurisdictional, this requirement "is a precondition to filing suit in district court." *Cruce*, 703 F.2d at 863. Thus, complaints asserting unexhausted claims should be dismissed for failure to state a claim under Rule 12(b)(6). *Id.*; *Dao*, 96 F.3d at 788; *King v. Life Sch.*, 809 F. Supp. 572, 578 (N.D. Tex. 2011).

### C.    Title VII

Title VII prohibits employers from discriminating against "any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . .." 42 U.S.C. § 2000e-2(a)(1) (2025). Liability for race

6

discrimination under Title VII requires a showing of "disparate treatment," meaning it "depends on whether the protected trait actually motivated the employer's decision." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015). Ultimately "[a] plaintiff can prove disparate treatment either (1) by direct evidence that a workplace . . . decision relie[d] expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in *McDonnell Douglas*." *Id.* at 213 (citation omitted).

However, "[a]t the Rule 12(b)(6) stage, [] analysis of the Title VII claim is governed by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)…." *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 599 (5th Cir. 2021). Under *Swierkiewicz*, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (quotations omitted) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). In short, when a plaintiff's Title VII discrimination claim depends on circumstantial evidence, the Court assess whether she pleaded facts that, if proven, could satisfy *McDonnell Douglas*. *Thornton v. Univ. of Tex. Sw. Med. Ctr. Sch. of Med.*, No. 24-10594, 2025 WL 619166, *2 (5th Cir. Feb. 26, 2025).

To that end, a plaintiff must establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework by showing that

> (1) [s]he is a member of a protected class, (2) [s]he was qualified for the position at issue, (3) [s]he was the subject of an adverse employment action, and (4) [s]he was treated less favorably because of [her] membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (citation omitted). Employment actions occur "under nearly identical circumstances" if "the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined

by the same person, and have essentially comparable violation histories." *Id.* at 260. "And, critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.*

If the plaintiff successfully establishes a *prima facie* case of discrimination, "the burden then shifts to the employer to produce evidence that its actions were justified by a legitimate, nondiscriminatory reason." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). Then, the plaintiff has the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant" were a mere pretext for discrimination. *Id.* (citation and internal quotation marks omitted). The plaintiff may alternatively prove that the employer's reasons were not the only reasons for its conduct, and the plaintiff's protected characteristic was another "motivating factor." *Id.* (citation omitted).

### D.    TCHRA § 21.051

The TCHRA prohibits employment discrimination based on "race, color, disability, religion, sex, national origin, or age." Tex. Lab. Code § 21.051 (West 2024). Texas courts apply judicial interpretations of Title VII and follow the United States Supreme Court's approach to Title VII when reviewing TCHRA claims. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012). Consequently, a plaintiff can prove discriminatory intent in a TCHRA claim by offering direct evidence of what the defendant did or said or with circumstantial evidence under the *McDonnell Douglas* framework. *Id.* at 634.

### E.    42 U.S.C. § 1981

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C.

§ 1981(a) (2025). The statute defines "[m]ake and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b); *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003). To bring a § 1981 claim for contract discrimination, a plaintiff "must allege that (1) [she is a member] of a racial minority; (2) [the] [d]efendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997)).

"The plaintiff may establish a prima facie case by direct evidence or, more commonly, by circumstantial evidence of discriminatory motive." *Bellows,* 118 F.3d at 274 (the plaintiff must make his prima facie case by a preponderance of the evidence). A plaintiff has the burden of initially pleading facts, that taken as true, permit the court to plausibly infer that "but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am. Owned Media*, 589 U.S. 327, 341 (2020)).

### F.    *Pro se* **parties**

The Court subjects a *pro se* party's pleadings to less rigid analysis than those of a party represented by counsel. "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, "even a liberally-construed *pro se* ... complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825-26 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370

(5th Cir. 1976). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to state a claim for relief." *Coleman v. Lincoln Par. Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017).

### G.    Dismissal with or without prejudice

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible, the Fifth Circuit has recommended that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice). As a result, courts generally allow a plaintiff at least one opportunity to amend following a Rule 12 dismissal on the pleadings. *Great Plains Tr. Co.*, 313 F.3d at 329; *see In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 548–49 (N.D. Tex. 2014) (Boyle, J.) (dismissing for failure to state a claim without prejudice, as dismissing with prejudice would be "too harsh a sanction").

Nonetheless, courts may appropriately dismiss an action with prejudice if the court finds that the plaintiff has alleged her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). Likewise, a court may dismiss an action with prejudice without affording plaintiff the chance to amend where the court invited the plaintiff to respond to the motion to dismiss, but she failed to do so. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). If the court "outline[s] in [its] opinion the deficiencies" of plaintiff's pleading and "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance

10

that plaintiff has been shown all the deference he is due." *Sims v. Tester*, No. 3:00-cv-0863-D, 2001 WL 627600, at *2-3 (N.D. Tex. Feb. 13, 2001).

## III.    ANALYSIS

### A.    Sanders did not exhaust her administrative remedies for her constructive discharge claim under Title VII or the TCHRA.

To be entitled to sue FedEx for constructive discharge, Sanders had to file a charge with the EEOC or TWC. *See McClain*, 519 F.3d at 673 (Title VII); *Jones v. Grinnell Corp.*, 235 F.3d 972, 974 (5th Cir. 2001) (TCHRA). Sanders has pleaded that she filed charges with the EEOC on March 13, 2023 (ECF No. 34 at 18) and December 3, 2022 (ECF No. 28-4 at 15). Though it is unclear if FedEx discharged Sanders on May 18, 2023, or June 8, 2023, either date is well past the dates when she filed her EEOC charges.

On either date, the charges could not relate to her alleged constructive discharge because she filed the charges before it occurred. If she wished to lodge a charge of discrimination in connection with the constructive discharge, she had to either file a new charge or amend or supplement her already-filed charges. *Smith v. City of Dall., Tex.*, No. 3:19-cv-2892, 2022 WL 3328906, at *2 (N.D. Tex. July 20, 2022) ("constructive discharge is a discrete event for which a plaintiff must amend or supplement his EEOC charge."); *Turner v. Medicenter Bryant, a Div. of San Angelo Cmty. Med. Ctr.*, No. 6-03-cv-076-C, 2004 WL 1923993, at *1 (N.D. Tex. Aug. 27, 2004) (holding that a Title VII complaint is limited to the scope of the EEOC charges filed, and that because certain allegations were not encompassed in in the Charge of Discrimination, Plaintiff did not exhaust her administrative remedies). Thus, if Sanders did not file a new charge or amend her existing charges, the Court must dismiss her claims arising from the alleged constructive discharge. *Stone v. La. Dept. of Revenue*, 590 F. App'x. 332, 338 (5th Cir. 2014) (affirming

dismissal of constructive discharge for lack of administrative exhaustion where plaintiff filed charge during her employment and never amended it).

Sanders claims that she informed the EEOC of her discharge via a letter written soon after her constructive discharge and within the required time for filing a discrimination charge. *See* ECF No. 34 at 18. However, sending a letter does not constitute exhaustion of her administrative remedies. Charges of discrimination must be signed and verified. *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 338 (5th Cir. 2021) ("[t]o satisfy the verification requirement, a charge must be 'sworn to or affirmed before a notary public, designated representative of the [EEOC], or other person duly authorized by law to administer oaths ... or supported by an unsworn declaration in writing under penalty of perjury.'") (quoting 29 C.F.R. §§ 1601.3, 1601.7, 1601.9, and 1601.12). Sanders offers no facts in the Amended Complaint or response to the Motion to Dismiss showing that she filed a charge of discrimination after the alleged constructive discharge or that she filed a signed and verified notice with the EEOC that amended or supplemented her previous charges. As a result, she did not exhaust her administrative remedies under Title VII and the TCHRA concerning discrimination in connection with her alleged constructive discharge.

Lawsuits may involve "any kind of discrimination like or related to the charge's allegations," but courts draw a line where a complaint is so different from the original charge the defendant would not have reasonable notice of the alleged discrimination. *Pacheco*, 448 F.3d at 789. Because Sanders's allegations regarding constructive discharge are far broader than the other actions stated in her EEOC charges, it would have been impossible for FedEx to ameliorate the situation or pursue an appropriate administrative remedy before the EEOC, which is the reason for the exhaustion requirement. *McClain*, 519 F.3d at 274 ("Courts should not condone lawsuits that exceed the scope of EEOC exhaustion because doing so would thwart the administrative process

12

and peremptorily substitute litigation for conciliation."). Accordingly, Judge O'Connor should dismiss Sanders's Title VII and TCHRA claims of race discrimination in connection with her alleged constructive termination for failure to exhaust her administrative remedies.

Ordinarily, "[w]hen a district court dismisses a claim under Rule 12(b)(6) for failure to exhaust administrative remedies, the dismissal is without prejudice to the claimant's right to return to court after it has exhausted its administrative remedies." *Martin K. Eby Const. Co., Inc. v. Dall. Area Rapid Transit,* 369 F.3d 464, 467 n.5 (5th Cir. 2004) (citing *Taylor,* 127 F.3d at 478; *Story v. Gibson*, 896 F.3d 693, 698 n.2 (5th Cir. 2018); *Crawford v. Tex. Army Nat'l Guard,* 794 F.2d 1034, 1035, 1037 (5th Cir. 1986)). However, the Fifth Circuit treats no differently plaintiffs who forego administrative exhaustion altogether and plaintiffs whose ostensible exhaustion was too narrow. *Id*.; *McClain*, 519 F.3d at 272-274. Therefore, dismissal with prejudice is appropriate when a plaintiff could not successfully bring her claim even if given the opportunity to amend it and fix its facial deficiencies. *Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016).

Because the time for filing a charge of discrimination arising from Sanders's alleged constructive discharge has long-since past, it would be futile for her to attempt to exhaust her administrative remedies as to that claim. Accordingly, Judge O'Connor should dismiss Sanders's claims for race discrimination in connection with constructive discharge under Title VII and TCHRA with prejudice.

> **B.    Sanders does not sufficiently plead a claim of race discrimination under Title VII, § 1981, or the TCHRA for failure to promote or under § 1981 for constructive discharge.**

"[R]ace discrimination claims brought pursuant to section 1981 are governed by the same evidentiary framework applicable to employment discrimination claims under Title VII." *Pegram*, 361 F.3d at 281 n. 7; *see also Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir.

2005) ("[T]he analysis under both [Title VII and § 1981] [is] identical, the only substantive differences between the two statutes being their respective statute of limitations and the requirement under Title VII that the employee exhaust administrative remedies." (citations omitted)). Accordingly, the Court considers Sanders's Title VII and § 1981 claims for failure to promote together.

Sanders alleges that her constructive termination violated § 1981 and that FedEx's failure to promote her violated § 1981, Title VII, and the TCHRA. ECF No. 28-4 at 7-8, 26. However, she does not plead facts to support a claim that FedEx or her managers explicitly withheld a promotion from her or constructively discharged her due to her race. So, the Court will analyze whether she pleaded facts that, if proven, could satisfy the *McDonnell Douglas* burden-shifting framework, using the requirements for a *prima facie* case as a guide for whether her Amended Complaint meets the *Twombly/Iqbal* pleading standard. *See Davis*, 2019 WL 1015341 at *8; *Thornton,* 2025 WL 619166, *2.

Even if Sanders stated facts to show the first three elements of a *prima facie* case for discrimination, she does not sufficiently plead that FedEx discriminated against her because of her race. FedEx does not dispute that Sanders is a member of a protected group since she is an African American woman. Additionally, Sanders alleges that FedEx advised her by letter on May 18, 2023 that it had investigated her complaints of retaliation and discriminatory harassment toward her. ECF No 28-4 at 26. Sanders states that because she believed she would need to continue to endure these harms "she was forced to submit to a constructive discharge … for the sake of her safety and mental health." *Id* at 26. While she alleges that she was harassed, she does not claim that this harassment was calculated to encourage her resignation. In the absence of facts to show the reasons behind the harassment, Sanders's claim should be dismissed. *See Lauderdale v. Texas Dep't of*

14

*Crim. Just., Institutional Div.*, 512 F.3d 157, 167 (5th Cir. 2007) (denying a claim of constructive discharge under Title VII and § 1981 because "[the plaintiff] offered evidence only of harassment, and there is no evidence that the harassment was calculated to encourage her resignation…").

For similar reasons, Sanders's claim for failure to promote does not state a claim. Sanders alleges that she was qualified to be promoted to Lead Consultant, that her manager said she was "perfect for" the position, and that she was more than qualified. ECF No. 28-4 at 6, 10. However, she does not plead facts to show that FedEx or its managers treated her less favorably than other similarly situated employees outside the protected groups. She attempts to show unequal treatment by stating that while FedEx refused to promote her, it promoted a white coworker to a Lead Consultant role. ECF No. 28-4 at 7. She concludes that "she was equally qualified" with her white coworker, and faced "nearly identical circumstances", yet he was favored over her. *Id*. at 10. However, she does not state facts to support this conclusion. As a result, Sanders does not sufficiently show that her coworker had a nearly identical background, or that she was not promoted because of her race. *See Lee*, 574 F.3d at 260.

Standing alone, these allegations are not enough to show disparate treatment. Sanders does not plead any facts to show that FedEx constructively discharged her or promoted a non-African American woman under nearly identical circumstances. Instead, she merely concludes without any factual description that FedEx constructively terminated her and did not promote her because of her race. Simply stating in conclusory fashion that she "was facing racial discrimination and retaliation" without pleading any supporting facts does not establish FedEx's discriminatory intent. ECF No. 28-4 at 15. Thus, Sanders's assertions that FedEx constructively terminated her and did not promote her because of her race are conclusory, speculative, and lack enough factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Because Sanders does not plead facts to support her race discrimination claims under Title VII, § 1981, and the TCHRA, she does not satisfy the Rule 12(b)(6) pleading standard. Consequently, Judge O'Connor should dismiss her claims of race discrimination due to her alleged constructive discharge and FedEx's failure to promote her under Title VII , § 1981, and the TCHRA.

### C.    Sanders sufficiently pleads a claim of retaliation because FedEx allegedly withheld her promotion.

"The substantive law governing Title VII and TCHRA retaliation claims is identical." *Gorman v. Verizon Wireless Tex.*, L.L.C., 753 F.3d 165, 170 (5th Cir. 2014). The TCHRA encompasses state retaliation claims under § 21.055. *See Evans v. City of Hous.*, 246 F.3d 344, 347 (5th Cir. 2001). Similarly, the analysis of discrimination and retaliation claims under § 1981 tracks Title VII claims. *Body by Cook, Inc.*, 869 F.3d at 386; *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021).

To state a retaliation claim under Title VII, a plaintiff must plead that (1) she engaged in an activity protected by the statute; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). An "adverse employment action" is defined differently for a retaliation claim than it is in the discrimination context. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006). In a retaliation case, it is an action that "a reasonable employee would have found ... [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotations omitted). A "tangible employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Title VII's retaliation provision encompasses two broad types of protected activity, making it "an unlawful employment practice for an employer to discriminate against any … employees ... [1] because he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a) (2025). Under the statute, making internal complaints or filing a charge with the EEOC is protected conduct. *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 384 (5th Cir. 2003).

To establish the causation element, the plaintiff must present either "direct evidence of retaliation," or "circumstantial evidence creating a rebuttable presumption of retaliation." *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007). Sanders can satisfy the causal connection element by "showing close timing between an employee's protected activity and an adverse action against [her]." *Fiest v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013). "Such temporal proximity must generally be 'very close.'" *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). As with Title VII race discrimination claims, the *McDonnel Douglas* burden-shifting framework applies when the plaintiff attempts to establish retaliatory intent under a pretext theory using circumstantial evidence. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 608 (5th Cir. 2005). After making a *prima facie* case, the burden shifts to the defendant like the Title VII discrimination claim. *See Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 395 (5th Cir. 2002). "The standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred 'but for' her protected conduct." *Septimus*, 399 F.3d at 608; *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004).

Sanders pleads facts showing that FedEx retaliated against her for filing a complaint with the HR department. She asserts that she "was denied a promotion….[i]mmediately after filing her

first FedEx HR complaint…" ECF No. 28-4 at 6. As mentioned earlier, making internal complaints is protected conduct. Withholding promotions is also an adverse employment action. *See Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 455 (5th Cir. 2024) ("Title VII's prohibition against discrimination extends to protect against either a tangible employment action, such as demotion or denial of promotion…") (internal quotations marks and citations omitted).

Sanders pleads fact to show a "causal link" between FedEx's decision to terminate her based in part on knowledge of her protected activity. *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001). "While generally, a causal link is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity, it can also be established simply by showing close enough timing between the two events." *January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023) (internal quotation marks and citations omitted). The Fifth Circuit has previously held that a six-week span "does the trick." *Id*. In this case, Sanders alleges that the day after she complained to HR, she was denied a promotion. She also alleges that she received a promotion after agreeing that she would not complain to HR further. *See* ECF No. 28-4 at 8-9.

FedEx argues that Sanders's claim under the TCHRA is time barred, but its argument is misplaced. *See* ECF No.32 at 11. Sanders filed a charge of discrimination before the 180-time period expired. She alleges that she was denied a promotion on August 1, 2022, and that after she agreed to refrain from complaining to HR, she was promoted "[t]he very next day." As a result, Sanders had until January 28, 2023 to file a Charge. Sanders alleged that she filed a Charge on December 3, 2022. ECF No. 28-4 at 15. Because she filed a charge within 180 days from the alleged harm, her claim for retaliation under the TCHRA was timely. For these reasons, Judge

18

O'Connor should not dismiss Sanders's retaliation claim arising from FedEx's failure to promote her under Title VII, § 1981, or § 21.055 of the TCHRA.

Sanders also alleges that FedEx threatened her with "demotion, firing, forcible transfer, withholding of promotion, and having her work hours/pay reduced for exercising her civil right to participate in protected activities." ECF No. 28-4 at 10. However, she does not offer any facts to show that the threats she received constituted an adverse employment action tied to her race. "[C]riticism, such as [a supervisor's] oral threats or abusive remarks, do[] not rise to the level of an adverse employment action." *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 470 (5th Cir. 2021). As a result, Judge O'Connor should dismiss Sanders's claim of retaliation due to alleged threats that FedEx managers made to Sanders.

**D.    The Court should dismiss Sanders's claims under § 1981 and Title VII arising from other events.**

**1.    Sanders has not pleaded facts to demonstrate a hostile work environment claim due to less desirable working conditions.**

Title VII makes it unlawful for employers to require "people to work in a discriminatorily hostile or abusive environment." *Gardner v. CLC of Pascagoula*, *L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). A hostile-work-environment claim "necessarily rests on an allegation that an employer has created a working environment heavily charged with discrimination." *Raj*, 714 F.3d at 330-31. "To be actionable, the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id*. To determine whether a work environment is objectively offensive, courts must consider "the totality of the circumstances," including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4)

whether it interferes with an employee's work performance." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." *West v. City of Hous., Tex.*, 960 F.3d 736, 743 (5th Cir. 2020) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)).

Sanders alleges that FedEx made her work in less desirable conditions. ECF No. 28-4 at 5. She asserts that her new assignments were more difficult than those required of another employee, including more demanding physical labor and less climate control. *See id*. at 19. However, Sanders does not allege that these new working conditions were physically threatening or humiliating or that they interfered with her performance. Instead, she recounts how her managers did their best to separate her from her alleged "harasser." *See* ECF No. 28-4 at 5. She focuses on only one other employee whom FedEx allowed to in conditions that would have suited Sanders better. *See id*. at 19. However, Sanders has not alleged facts to support the pervasive hostility and threatening and humiliating conditions that the law requires to assert a hostile-work-environment claim under Title VII, and Judge O'Connor should dismiss this claim.

**2.    Sanders has not pleaded facts to show that she was demoted.**

Sanders alleges that after making her EEOC Charge on December 3, 2022, FedEx and its managers significantly reduced her responsibilities as a Lead Consultant, which constituted a demotion. "To be equivalent to a demotion, [an action need not] result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement*." Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 218 (5th Cir. 2023). Sanders does not plead any facts to support the conclusion that her new position was objectively worse than her prior position. She did not allege that her pay, title, or position changed. She also did not plead that her new position was less

prestigious or interesting, or that it provides less room for advancement. She simply concludes that the demotion evidenced retaliation. *See* ECF No. 28-4 at 16. As a result, Sanders has not pleaded that her alleged demotion was an adverse employment action required for a claim of discrimination or retaliation under Title VII. *See Young,* 575 U.S. at 212; *McCoy*, 492 F.3d at 556-57.

> **E.    The Court should dismiss Sanders's remaining state law claims.**

Finally, Sanders alleges that the Defendants violated Texas Civil Practice & Remedies Code § 142.001 for negligent retention, supervision, and gross negligence. ECF No. 28-4 at 27-37. Essentially, she seeks to hold FedEx liable for its negligent supervision and retention of its employees. FedEx argues that Title VII preempts these claims. *See* ECF No. 32 at 19-20. In her response, Sanders concedes that "the Plaintiff believes that it is fair and reasonable to dismiss the count of TX CIV PRAC & REM § 142.001" ECF No. 34 at 23. The law supports this concession since Title VII preempts these claims. *See Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 980 (N.D. Tex. 2011), *Light v. Pepperidge Farm, Inc*., No. 4:23-cv-01177-P, 2024 WL 1703714, *1 (N.D. Tex. Apr. 19, 2024) ("Title VII preempts [the plaintiff's] claim for negligent supervision and retention."). As a result, Judge O'Connor should dismiss these claims.

## IV.    CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT IN PART** and **DENY in PART** FedEx's Motion to Dismiss (ECF No. 32). Judge O'Connor should (1) **DISMISS** Sanders's race discrimination claims; (2) **DENY** the Motion to Dismiss as to Sanders's claim for retaliation under Title VII, 42 U.S.C. § 1981, and § 21.055 of the Texas Commission on Human Rights Act; and (3) **DISMISS** Sanders's state law claims for negligent retention, supervision, and gross negligence.

A copy of these findings, conclusions, and recommendation shall be served on all parties

in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

      **SIGNED** on March 4, 2025.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE